**D. F. SHEETS et al., Appellants,**

**v.**

**Leslie H. WINANS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 18, 1955.

Rehearing Denied Jan. 27, 1956.

In 1923 the Old Orchard Addition near Ashland was subdivided into 250 lots. The owner of the .addition placed certain restrictive conditions upon all the lots in his attempt to assure a good residential neighborhood. In May, 1949, Mr. and Mrs. Sheets purchased seven adjacent lots. in the subdivision. Four of them fronted on Valley Drive, and three on Wyndham Court; however, they joined in the rear. On one of the lots fronting on Wyndham Court the Sheetses constructed a white frame and concrete block building, which, since June 1949, has been used as a stable for three riding show horses used by the Sheets family.

The deeds to the seven lots contained several restrictive covenants, including the following ones:

2. "No buildings of any character shall be erected upon said premises except churches, residences or dwellings and necessary and proper appurtenances. * * * .

3. "No residence or dwelling house shall be used for any purpose other than residence or dwelling purposes, nor shall any structure erected as an appurtenance thereto be used except as an appurtenance to such residence or dwelling."

These restrictions were in all the deeds to the lots in the subdivision.

Gray & Woods, Robert P. Woods, Ashland, for appellants.

Frank C. Malin, Howard Van Antwerp, Jr., Ashland, for appellees.

CAMMACK, Judge.

This is an appeal from a judgment permanently enjoining the appellants, D. F. Sheets and Aldine Sheets, from maintaining or using a building on their residential property as a stable for horses· or any live stock. The appellees are owners of residential property in the same subdivision near the property of the appellants.

Since the subdivision was established there have been four instances of property owners keeping horses for family use. One owner, other than the appellants, has done so recently. Several lot owners have kept chickens, turkeys, guineas, and hunting dogs. Others have maintained dog kennels, poultry houses, and swimming pools.

The trial court found that the appellants' stable was maintained in violation of the restrictive covenants because it was not a necessary or proper appurtenance to their residence. As we have noted, he enjoined permanently the use of the building for housing horses or other live stock. The appellants urge that the judgment should be

reversed because (1) the trial court failed to make a finding of facts and state separately his conclusions of law; (2) the restrictive covenants were not intended to prohibit necessary appurtenances such as stables; (3) if the restrictive covenants were intended to prohibit stables, they have been waived and abandoned; (4) improper evidence was admitted on trial; and (5) the stable is not a nuisance.

■ Although both parties argue the nuisance issue in their briefs, it is unnecessary to discuss that question because the trial court based his ruling against the appellants upon the violation of the retrictive covenants and made no findings on the nuisance issue.

■■ The appellants contend that it was improper to permit the grantors of the lots to testify concerning their reasons for placing the restrictive covenants in the deeds. Ordinarily the intention of the parties to a deed must be ascertained from the instrument itself, but if a provision therein is ambiguous, extrinsic evidence may be introduced to explain the ambiguity. Lambert v. Pritchett, Ky., 284 S.W.2d 90; Kavanaugh v. Clay, Ky., 275 S.W.2d 938. Under the circumstances of this case we think there was sufficient doubt as to the meaning of the covenants to justify the introduction of extrinsic evidence. Furthermore, the appellants admit in their brief that the covenants are ambiguous.

■ The appellants' contention that the trial court committed reversible error in not stating separately the findings of fact and conclusions of law as provided in CR 52.01 is without merit. The basis of the contention is that the judgment contains no specific finding on the issue of waiver and abandonment. However, it is obvious that the trial court concluded the covenants had not been waived or abandoned since he found that they were violated by the appellants in maintaining their stable. Necessarily this finding was based upon the premise that the covenants were still in effect.

■ In support of their contention that a stable is a necessary and proper appurtenance, the appellants refer to the early case of Highland Realty Co. v. Groves, 130 Ky. 374, 113 S.W. 420, in which this Court said that a stable used in connection with the suburban residence of a physician might not be a violation of a covenant limiting the use of the lot to residence purposes. That case was decided in 1908 when most local traveling was done by horse. Certainly the case is not controlling here. In Will v. Garfein, 227 Ky. 826, 14 S.W.2d 143, this Court said that the use of the words "necessary outbuildings" in a restrictive covenant was intended to confine such buildings to those "usually appurtenant to a residence and essential to its comfortable enjoyment as a home." The trial court found that the stable involved herein was not an appurtenance necessary or proper to the enjoyment of the residence owned by the appellants. Under CR 52.01 that finding of fact cannot be set aside unless clearly erroneous. The trial court was familiar with the particular subdivision involved. Evidence was introduced showing the type of homes maintained in the area and the type of outdoor activities carried on there. We are unable to conclude that the decision on this issue was clearly erroneous.

■ Lastly, the appellants contend that the restrictive covenants, even if intended to prohibit stables for pleasure horses, have been waived and abandoned, in view of the various appurtenances which neighboring lot owners have maintained with the acquiescence of other owners in the subdivision. The trial court concluded implicitly that the character of the neighborhood had not been changed and the covenants had not been waived or abandoned by the owners, so as to result in a loss of the right to enforce them. See Bagby v. Stewart's Ex'r, Ky., 265 S.W.2d 75. The evidence showed that the Sheetses had received, about the time construction of the stable was started, a petition from some of the lot owners in the subdivision objecting to their use of the lot for maintaining the stable. In view of the fact that the record reveals only isolated instances where stables or

other similar appurtenances have been maintained in the subdivision, we can not say that the court's finding of fact on this issue was clearly erroneous.

The judgment is affirmed.